The first case for argument is 17-2471 Unisone Strategic v. Life Technologies. Mr. Geiser, you're ready? Thank you, Your Honor. Thank you. Good morning. Thank you, Your Honor. May it please the Court. The Board erred in finding that Unisense patent falls within the narrow set of patents eligible for CBM review. The patented claims do not offer a financial product or service in any ordinary sense. By their terms, the claims manage inventory. What do you call the ordinary sense, just being the banking area, the banking sphere, and the financial institution sphere? The Court has rejected that. I do actually think that that is a more accurate description of the statutory term, but we'll take what Versada said, which is it's monetary matters. And so a financial product or service has to be a product or service related to monetary matters. And so if you look at the examples that this Court has had where it has found a CBM review, it looks nothing at all like the patent in this case. So if you look at Blue Calypso, that had an actual economic subsidy. It said there was financial assistance offered as part of the actual patented claims. If you look at SightSound, it wasn't just that there was a sale. It actually, the claim recited the movement of money. It was a financial transaction that was actually captured as part of the claim. Well, what about the fact that this claim includes ordering? Well, the ordering is different, though, than the actual purchase. The ordering is part of managing the inventory and seeing when the inventories drop below a certain level. But the actual purchasing and payment would occur outside the patented claims. So this is not a patent that captures sales, and it's very distinctive in that if you look at column 11 of the patent, and this is on the appendix on page 99, you can see that it actually distinguishes between a payment system and ordering. This is simply basically developing matches between a customer and a potential supplier. So how does ordering inventory not involve a sale? Well, it doesn't involve a sale itself, Your Honor. It simply is identifying two parties who then have to consummate the sale outside of the patented claim. And that's really a distinctive component. First, I don't think a sale itself would be enough anyway. If a sale were sufficient, then a neighborhood lemonade stand would be No one thinks when you go to the grocery store to buy milk. The grocery store is offering a financial... But it is setting up an inventory ordering and also providing the cost information necessary for the parties to make the transaction, right? Well, yes and no, Your Honor. In Claim 19, which is the only claim that the board analyzed, that's what the court under Chenery has to review. The only component of cost is provided by the manufacturer. The actual, the customer's inventory and their needs is entirely self-directed. If the customer decides that they care about cost, then the patent includes cost as a factor. If they just care about speed or quantity, they might just say, we don't care how much it costs. We just want 10 widgets delivered. The cost is there. It's in the ether of everything that's going on here is the cost. Well, cost, but it's still not organizing or offering a financial product or service. It's not a monetary product or service. It's simply managing the inventory levels. And the inventive concept, again, was inserting this intermediate database structure so that you can have inventory tracked and you can have multiple manufacturers letting customers know how the quantity they have available and how soon they can deliver products. And yes, at what cost, but it still is... You said that you did not think that having sales would be a financial service. What legal support do you have for that? Well, I think two pieces, two cases, and I think in the one logical principle. The two cases are first an unwired plan that it specifically said that a potential sale is not enough. And if you look... What about an actual sale? Well, an actual sale, again, is not enough. This court has never held that an actual sale would be sufficient. If you look to sites... I understand, but you said everybody knows or everybody agrees. I want to know what your legal support is for that. I'm sorry. If I said that, then I hope everyone will eventually agree with that. But I think if you look to this court's precedents, the closest that this court has come to saying that a sale is covered is Sitesound. But Sitesound's logic was specifically tied to the idea that a financial transaction was captured by the patented claim. It was about moving money and deducting payments from an account. You asked in the first CV on the board construed customer to be the buyer of inventory via the current invention, right? That's correct, Your Honor. And why doesn't that contemplate the movement of money? Well, again, Your Honor, that was not the logic that the board rested on below. Under Chenery's principles, the court reviews the logic as announced and articulated by the board itself. We did not argue that point in this particular CBM. We're not judicially stopped, contrary to my friend's suggestion, because we lost in the first CBM. So this is bedrock judicial estoppel principles. Unless it's litigated here, we're not bound by it. And unless the board actually said that the definition of customer is what's driving its analysis, and under Chenery, this court doesn't look to it. So I don't think that actually matters. But even if I might disagree with the breadth of the interpretation that the PTO has put on it and that we endorsed through Versada and other cases, isn't it true that what the PTO defines is something relating to a financial transaction? I think what they've defined is, and this is what this court adopted in Versada, is that financial means monetary matters. So that's the adjective. And then it's monetary matters as to what? It's a product or service. So to get back to Judge Stoll's question, the legal principle that I hope will convince you that an ordinary sale isn't enough is that it can't possibly be true that when you go to the grocery store and you buy milk, you come out and say, I just engaged, the grocery store was offering a financial product and service. They might think that if you offered a credit card and you were getting special financing for purchasing your groceries, but an actual sale is not enough. And again, this court has never held to the contrary. In Sitesound, the logic was tied directly to the concept that it was a specific financial transaction. It was reciting, as they said on page 1311 of the court's decision, the electronic movement of money between financially distinct entities. If a sale alone were good enough, it could have skipped. Can I just ask you, are you quoting from Sitesound? Sitesound, yes. I have a quote in front of me from Sitesound that says, the electronic sale of something, including charging a federal party's account, is a financial activity. And allowing such a sale amounts to providing a financial service. Yes, but I think the Sitesound also said, quoting the board's specific logic at 1311, that it was that financial transaction that was claimed in the claim itself that mattered. And just to compare it to the patent here. I guess the quote is talking about the sale of something is enough. Allowing such a sale amounts to providing a financial service. So I thought you were saying for five minutes that selling something isn't enough. Your Honor, I think you have to read that language in context. And both the board's decision at page 1311, which is reproduced in that sentence, reproduced in the opinion. And if you look again to 1315 to 1316, it specifically is talking about charging a fee to the party's account. Again, if a sale were enough, they wouldn't have had to include that language. And if a sale is enough, and all the patent has to do is relate to a sale, then it literally covers everything in the entire universe of economic activity. If Congress meant anything in commerce or business, it had easier and more familiar ways to say that. It instead shows this very distinctive concept of a financial product or service. And maybe Versada rejected the idea that this is tethered specifically to the banking industry, but it accepted the notion that it involves monetary matters. And those two things are perfectly consistent with each other. You can have lots of entities that are not banks and they're not insurance companies. They can be the grocery store that's offering you a credit card. Offering you a credit card with special financing if you buy the groceries at that store is surely engaging in a financial product or service. But this patent doesn't do that. And again, this is very critical. The patent here does not even claim the sale. The patent contemplates a sale. It's one of the advantages is it can set it up so parties outside of the patent can actually consummate a sale. But it doesn't claim the sale itself. So this is coming down to where I think, and this is a separate error that the board made by effectively reinstating the very standard that this court rejected in Unwired Planet. It said that there is a connection to a financial transaction. It necessarily relates to financial transactions. Because the financial transaction, the actual sale, the movement of money, that's taking place outside the patent. But this court already said that being incidental to and complementary to financial activity is not enough. So the board basically chose a synonym and then reinstated the exact standard that this court has already rejected. So I think that itself is a sufficient basis for saying that the board committed plain legal error in analyzing this patent. And another mistake that the board made, even if you, I hope you agree with me on the actual reading and analysis of what a covered business method claims to give it some sort of narrowing scope so it's not capturing every transaction, which we know Congress didn't want to do. But even if you disagree on that, it's the board that has to come up and articulate with a reasoned, rational basis for saying that this patent falls within its jurisdiction under the CBM program. And the board here failed to do that. The board simply... Haven't we said that allowing an electronic sale of something is itself covered by CBM? No, Your Honor. I think the closest case I recite sound, which again, I think turned on a more precise and refined rationale, as I think it would have to do to avoid, again, capturing every neighborhood lemonade stand. No one sees a lemonade stand and would naturally come out and say, the kid on the corner is offering a financial product or service. If someone said that, they'd be shocked. They'd expect them to be offering loans or engage in something related to monetary matters, as this court said in Versailles. But that's not this patent. This patent doesn't price products. The role of costs in actually matching the users with the manufacturers is entirely self-directed. The patent doesn't care. You can put it in a black box. It simply says, what are the factors that you care about? And they might not care about costs at all. They might just care about speed or quantity. They might care about quality. We only want it from a AAA-rated manufacturer. The claim language itself calls out cost information. It does, Your Honor, as saying something that can be submitted by a manufacturer. But the actual factors that drive the analysis with the patented method are parameters that are provided by the customer. And if you look at, this is Claim 19 in A3, it talks about inventory restocking parameters provided by said customer. If you continue down to C, it talks about deciding what manufacturer will best fulfill the inventory restocking parameters provided by said customer. So it's not really something that is being driven by cost or a financial transaction as part of the patent. It doesn't collect money. It doesn't move money. It doesn't actually facilitate a direct sale. It doesn't buy or sell the products even. This is simply a device for effectively serving as a matchmaker between users and manufacturers, managing inventory automatically and dynamically. And that is certainly a part and has a clear role and benefit for business and commerce. But it is not a financial, monetary product or monetary service under any ordinary construction of those terms. And if the court does find that it is, it's very hard to come up with a limiting principle that would separate this patent from the entire universe of commercial activity. Unless there are further questions. Thank you very much. May it please the court, Mike Keklis for Apelli Life Technologies. This case is all about whether the 538 patent qualifies as a covered business method patent. And I submit to this court that the 538 patent is the epitome of a covered business method patent. The statute as well as this court's case law directs us to look at the claim. So I would direct this court to appendix page 8 of the final written decision where, your honors, you've kind of already gotten into this. I'd like to get into this in a little more detail. Claim 19 is the representative claim that the board analyzed for CBM eligibility. It's a method for inventory management. What they called out and specifically analyzed for the financial prong aspect was collecting and storing on one or more databases. That's A, A2, inventory and cost information. Cost information of the distributor's products. Inventory restocking parameters. Now they didn't really analyze the next step, but it's important to look at the next step because my colleague on the other side kind of omitted this. Evaluating via at least one computer said customer inventory information and inventory or cost information. So that information is actually being utilized. Then the next step, ordering inventory which best fulfills the inventory restocking parameters provided by the customer. The last step that the board analyzed is providing access by client software to information in one or more databases to each said customer, manufacturer, supplier, et cetera. So we have two things going on here, your honors. Number one, there's management of a sales function, which is inventory management. And number two, there's... I'm sorry, can you repeat that? Management of a sales function. Management of a sales function. Yes, your honor. By managing inventory for a company, you're managing the sales function, right? You're keeping track of the inventory as it's being sold out the front door. Front door of the business is my example. So as customers are coming into your store and they're taking products off the shelves, it's keeping track of how things are being sold, et cetera. And there's also an actual sale, which you alluded to yourself, your honor, which is the ordering inventory step, which is kind of the back door, right? So as the products are coming out the front door, the system is automatically ordering inventory from your suppliers. That's necessarily a sale. That's necessarily a sale. And I think any definition of financial activity would include a sale. In fact, Sitesound, as your honor did point to, Sitesound does have that language, allowing a sale was good enough. And in Versada, there wasn't a sale. I re-reviewed the claims a couple of days ago and all there was was determining a price for a product that was to be offered for sale. In this claim, claim 19, we have that. We have cost information. And then in step F, you have providing access to that information. So you're using the cost information. But the other point is that there is actually a sale here, which is ordering inventory. Now, my colleague on the other side tries to distinguish between ordering and actually payment. First of all, I don't think that it would matter if you include a debit or an invoice. I think that's certainly good enough. And he cites to column 11 of the specification and just says that, aha, somehow there's a sentence there that distinguishes between payment and sales. I've looked at that. My colleague on the other side. Do you want to give us a line on column 11? Yes, your honor. I believe it's 47 to 51, but I will find it myself. Yes. 47 to 51. It says Los Angeles server may further integrate with an automated payment system, thereby limiting invoicing and other such expenses. But my colleague on the other side doesn't provide any support for how that raises to the level of a disclaimer or some other limiting factor that would limit the claim scope. And interestingly, your honor, in his very brief, blue brief, opening brief on page six is an admission. On page six at the very bottom of my colleague's opening brief, he says an overview of the basic process describes its core function, colon. And then at the top of seven, now he's quoting from the specification, when an appropriate distributor 120 response is chosen, comma, server 100 may automatically arrange payment and shipping of requested supplies for customer inventory system 130. I think your friend on the other side would argue that what is in column 11 is a description of a system that automatically orders inventory, holds it, and then the customer can then place the order against that inventory hold. Your honor, I think that just the normal context of the word ordering from suppliers with whom you have a relationship, you're saying, give me more product. And the payment step could be credit card, which the specification contemplates. It could be automatic, which I've just read to this court. And there could be other reasons, other ways it could happen. But it does say that the invention automatically orders the inventory. And then it says client software can then provide a customer with the ability to quickly place such orders. I'm sorry, where are you reading from, your honor? Column 11. I'm looking at lines 5 through 12. And then right below that. I don't. Look at line 15. In a preferred embodiment, a customer may select from products or groups of products already included in an inventory or stocking plan. I'm sorry, you're in column 5, your honor? Column 11. Column 11, yes. Well, first of all, your honor, I don't think that that rises to a level of being any kind of a disclaimer for the specification because the specification specifically talks about, as I just pointed out, this automatic payment. So I would submit that, first of all, this language can't be used to contradict the claim language itself. The claim language itself says ordering inventory. That is a sale. And I would further note that the next element after ordering inventory actually includes the language of tracking inventory items, blah, blah, blah, the number of items this manufacturer, as inventory items are added to, restocked to. So in step C, you've got ordering. And then in step D, you've got recognition of a consummated sale by restocking. And in my colleague's opening brief, he equates the term restocking with a sale. And that's at page 2, at the very bottom. He admits that inventory cannot be restocked without some purchase. Here, the claim specifically recites ordering inventory and contemplates that it's restocked. The order is a sale and it's consummated. Are there other potential embodiments in the specification? Yes. But I don't believe that those are claimed and certainly they don't, they can't be used to contradict the plain language of the claim. I would also point this court to other places in the specification that contemplate other payment methods. For example, Your Honor, you had pointed to the definition of customer. And the definition of customer in the specification on column 5 refers to a buyer of products via the present invention. Customers can have open account relationships to avoid credit card and COD shipment problems. So there are a whole host of different ways that payment can be achieved. But certainly ordering inventory from a distributor with whom you have a relationship and incurring an invoice or paying for it outright, you know, is clearly a financial activity. I would also like to address my colleague on the other side's argument about the board applying the wrong standard. This is not a case like Unwired Planet. In this case, what happened was the appellant didn't participate below until they were ordered to do so by the PTAB. And in that phone call, the judges asked for supplemental briefing specifically to address Unwired Planet and Secure Access, which has since been vacated by the Supreme Court. The board specifically asked for supplemental briefing, both parties engaged in it, and then they came up with a reasoned decision on pages 12 through 21, 10 pages analysis in appendix 12 through 21 that addresses the financial aspect as well as the technological invention exception. Now, what I would point to, Your Honor, is that my colleague on the other side points to some language by the board connection to and relates to, but this is simply not a situation like Unwired Planet. In Unwired Planet, you had a situation where the board went from the statute to some policy statement by the PTO and then did the analysis. Here on pages 14 through 18, which is the meat of the analysis, the board relies upon AIA section 18D1 no less than nine times. They're going not from the statute to some intermediary policy statement, they're going from the statute to the claim. And then they have a well-reasoned opinion that gets into the heart of this analysis. Now, the connection to language that my colleague points to at 16 is after the board has already reached the conclusion that the elements, which I've already described to this court, are a financial activity or financial in nature, what the board then goes on to is basically say that the specification confirms the challenge claims connection to, then they quote the statutory language. And then they go through the specification, which describes in financial aspects as the present invention. In fact, if this court would look at the summary of the invention section of the patent, that whole section is talking about financial aspects and it's couched in terms of the present invention. And the board is acknowledging that at the bottom of 16. And it's simply saying that the specification supports what we're saying here. And then this necessarily relates to language at the bottom of 17. Well, Your Honor, that's virtually indistinguishable from the quote from Versada, which the board has in the previous paragraph, where it says the plain text, this is on 17, the plain text of the statutory definition contained in section 18D1 ellipsis, on its face covers a wide range of finance-related activities. Later on in the paragraph below, it does equate ordering manufacturer, the ordering step necessarily relates to, and then it quotes the 18D1 section of the statute. And then it talks about sites to purchasing is a large part of inventory maintenance. Again, from the specification, acknowledging that there's sales going on with the invention. But just to show that the wrong standard was not used, look at the next sentence. The next sentence on 18 says, specifically says, the board says, we also determined that for similar reasons, the same step of claim 19 recites an activity that is financial in nature. Financial in nature was adopted by this court in blue calypso as an accurate representation of what the statute says. So your honors, this is a 538 patent is the epitome of a covered business method patent. It fits comfortably within Versada as well as Sitesound. In Versada, you had the determination of a price. Here we have cost information. In Sitesound, you have a sale and this court said that allowing a sale is sufficient. Here we have an actual sale. So unless there are any other questions from this court, we respectfully request affirmance of the decision below. Thank you, your honors. Thank you, your honors. Just a few quick points. Judge O'Malley has the reading of the patent exactly right. On column 11, it confirms there's no actual sale. And that's actually what the board determined below. On page 17, it agreed that the claims do not, and this is a quote, the claims do not recite a financial transaction or sales. They do not provide for payment. They do not require a payment system and do not determine a price. So that clearly is a separate component of the engagement. It is true, it says that it can track items as they're restocked. But again, that's not claiming the sale. That's if a sale is consummated outside the patent, part of an inventory management system is tracking inventory. So those two things are very different. My friend suggested if you look to page 8 and to other parts of the board's analysis, that you'll see repeating certain standards from this court's cases. What you won't see is any articulated rationale. There is no analysis. It simply summarizes the party's positions. It repeats language from the claims, italicizing certain words with no explanation at all. And it says we're persuaded by the petitioner and not by the patent owner. That is not engaging with the party's arguments. That's simply repeating what arguments were out there and saying that side wins. That it flunks the basic standards of APA review. I also think that if you look to Versada, my friend said Versada is in fact, like this case, it's nothing like it. The patent at Versada was determining price. That is a very specific financial transaction. It's looking at the right way to price products. That might fall closer to the heartland of a financial product and service. Here, the cost information is taken in a black box by the manufacturers. Again, this is not a patent that tries to determine what the cost should be or how you should use the cost. Any input with cost or pricing or finance is entirely self-directed by the users. The patent is simply managing inventory and matching the customer, the user with the manufacturers according to their own determined parameters. So again, I think that if the court determines that this is a financial product or service, it would be very difficult to determine any product at all that is related to commerce or any economic transaction that would fall outside the definition. And if Congress meant to include every single patent in a covered business patent, it certainly had a better way to write the statute than it did. Unless there are further questions. Thank you.